May it please the court, my name is Jeffrey Needle. I'd like to reserve, I represent Mr. Peterson, and I'd like to reserve three minutes if possible for rebuttal. Just keep an eye on the clock, and you see that... I will do your honor. We'll try to work with you, okay? We would like this court to do a number of things. One, we'd like the court to rule as a matter of law that Mr. Peterson reasonably believed that there existed a racially hostile work environment. As a matter of law, we want this court to rule that that objection, his opposition to that racially hostile work environment, caused him to be terminated from employment. As a matter of law... Would you like us to award damages to? Pardon? Would you like us to award damages to? That can go to the jury, your honor. I see, okay, well... But I'm not being facetious. We believe he... How could we possibly make a ruling as a matter of law on the causation question, on the second question? Because they admit it. I mean, it's indisputed. I mean, they fired him allegedly because he reported this email, this racist email, outside the chain of command. Because he did not report it through the chain of command, he reported it in a way which they determined was not appropriate. Agreed, but that's what caused him to be fired. So the defense to that is that he did it in a manner in which caused disruption or disrupted the harmonious operation of the workplace. That would be the defense. But they don't dispute why they fired him. They fired him because he reported the racist email. They say he did it in a disruptive way that the manner was the problem that they had. The manner of opposition is an affirmative defense. It has been waived in this case. And there is not one scintilla of evidence to support it, your honor. Help me understand why you say that the manner of reporting has been waived. Lisa, I understand you to say that they can't argue that they fired him because he reported it sideways to the black employee. They waived that. Is that what you're telling me? No, your honor. They did fire him because he reported the email outside the chain of command. That's the first thing. But that's protected conduct because he can a person in under Section 1981 or Title 7 can oppose not just to management. They can they can legally oppose it to just a coworker. But putting that aside, they admit that they fired him because he reported the email outside of the chain of command. I got that. But I'm trying to figure out what you say they waived. So their defense to that is that, well, it's true that we did that. But we were entitled to do that because the manner of his opposition disrupted the workplace and the harmony in the workplace. And therefore we were entitled to do it. The manner of opposition. That's what I'm talking about now. Why is it waived? It's waived because it's an affirmative defense. And if the court will look at this record, it is clear that it's an affirmative defense. And it's clear that they waived it. I was the one who brought it up in summary judgment, not them. I still don't understand. And if this takes you over, well, we'll take you over a little bit. The defense from the employer is we fired you because you didn't report it up the chain of command. We fired you because you reported that black employee who was not up the chain of command. Outside the chain of command. And you say the manner in which he did it is waived. Well, what do you mean by the manner? Obviously up the chain of command across sideways is not what you mean. You mean something else. No, but that is what I mean exactly. In other words, one, just to make it clear, he was entitled to report it to a co-worker. Ninth Circuit law is clear on that. Opposition to a co-worker is protected activity. They say, okay, you didn't report it directly to HR. You reported it through somebody else to HR outside the chain of command. But he nevertheless was reporting it. And that's indisputably what caused him to be fired was the reporting of this email. So the question is, how did he report it? Did he report it in a proper way or did he report it in an improper way? How was it waived, though? So why don't we get beyond waiver? And the manner of the way he reported it was clearly before the district court and certainly went before the jury. So what's your best argument then? Assuming that it wasn't waived, what's your best argument that it still fails as a matter of law? I asked every single employer, every single person in management and deposition, and it was all before the jury. The head of human resources, Mr. Andreessen, said, if it interfered with his ability to do the job, he has no knowledge of it. He was aware of no complaints about Mr. Peters from any source and was not aware of any instance. So you're saying there wasn't substantial disruption of the workplace. There's not evidence of any disruption. And not only does there have to be evidence of disruption, that has to be why they fired him. They have to fire him because of the disruption that he caused. They didn't fire him because of disruption that he caused. There was this whole meeting they had that's called the DARB meeting. They had nothing to do with it. It never came up. I don't think they've claimed that there was actual disruption. I thought what they claimed is we have a chain of command and you're not supposed to report it this other way because that kind of thing can cause disruption. I don't think they said there was any actual disruption in this case. It can cause bad blood among the employees. Well, you're right. They didn't claim disruption, but that's the only defense to the claim because that is why he was… Why can't they have rules that are meant to ensure workplace tranquility? And when you violate the rule, it may not cause disruption every time. You know, you're shaking your head and you're looking skeptical. Why don't you let me finish the question? Yes, Your Honor. Oh, go ahead. Do you want to answer it? No, I think… You obviously have an answer. Well, I think they cannot impose a workplace rule that violates Title VII. How does this violate Title VII? They say, look, we want this reported. We want to report it in certain ways. There are certain other ways which we think can cause disruption. We don't want you to do these things because it can cause disruption. But it has to cause disruption. If there's no evidence of disruption… Why does it have to cause disruption? You say, look, we have ways in which we think if you do it, it will cause disruption often enough. And the fact that it does or does not cause disruption in a particular instance doesn't contradict the fact that this is the kind of rule that's in place to maintain tranquility in the workplace. I could spend a lot of time rebutting that argument, but let me do it this way instead. It's not an argument, it's a question. Well, answering that question… Well, go ahead. Just spend whatever time you need because you're going to have to persuade me of that. I'm about to try. Just go ahead. I'm about to try. Let's assume only for the sake of discussion that they could have that kind of a workplace rule. Mr. Peterson, under Ninth Circuit law, has the right to discuss this with another co-worker. He doesn't have to. Where does the right come from? Where did that come from? That's Ninth Circuit case law, Your Honor. That is… One second. I mean, is it a constitutional right? No, it's not a… What kind of right is this? I mean, this is not a government employer, right? What kind of right is this that says you're entitled to discuss anything you want with your… Well, no, I didn't say he had a right to discuss anything he wanted. He has a right to discuss his opposition to a racially hostile work environment. That he does have a right to discuss, and I would… He can certainly discuss his opposition to a racially hostile work environment. There's no rule against that. The rule is against reporting such misconduct to a subordinate or co-worker rather than reporting it up the chain of command. I… Opposition, we think this is a bad rule. We think… I think hostile work environment is bad. He's free to discuss all those things. The EEOC compliance manual, section 8, Roman 2b2, provides that a complaint or protest about alleged employment discrimination to a manager, union official, co-worker, or anyone else constitutes opposition-protected activity. And I rely on that and the case law that supports it. And that… It's a Ninth Circuit case. There is… It's a Ninth Circuit case. We cited some of that on page 15 of our brief, Your Honor, our primary brief. His opposition to… Do you have your brief?  Do you have your brief? I do have my brief. Tell us what the name of it is. You've got to look on page 15 and find it. Yes. We cited EEOC versus Crown-Zellerbach. We cited… That is a Ninth Circuit case. We cited Federal Express… And it stands for that proposition? It does, Your Honor. We also cited… I am looking at page 15 of your brief. I don't see… I don't see the citation at all. It's a reply brief, Your Honor. I apologize. Well, you cited in your reply brief. It's page 15 and 16 of the reply brief. What's the site? What's the page in that case? Crown versus Zellerbach. It's 720 Fed Second. I got that. What's the pin site? Page 1014. That's the rule that you… 1014, Your Honor. Page 1014. We also cite cases from the Sixth Circuit, and we cite cases from the Federal Circuit and the Third Circuit and the Second Circuit, and District Court cases as well. This is not a Crown v. Seven case. This is a 1981 case, right? Crown-Zellerbach? No, no, your case. It is a Section 1981 case. That's correct, Your Honor. So what is the relevance of the Title VII manual? Well, the standards are the same. When you played, the court hasn't in the past applied a different standard for Title VII than it has for Section 1981. The court may rule that way in this case, but it hasn't ruled that way in the past, Your Honor. Okay. You're out of time. Let me hear from the other side. I think I'm probably out of time, unless the court has… Tell me about it. You're into negative numbers. Pardon? You are out of time. Thank you, Your Honor. You're over time. Thank you, Your Honor. May it please the Court. I'm Jim Calamon. I represent National Security Technology. What counsel has overlooked here is that this issue about whether or not his client was retaliated by virtue of having made some sort of opposition activity was answered by the jury in the negative. Well, but the fact is he's conceding that because he's asking us to rule as a matter of law. So he's saying the jury findings on the verdict don't count because as a matter of law, it was protected activity. Why isn't he right about that? Your Honor, the… How can it be a violation to report an alleged discriminatory matter of conduct? An employer can take into consideration how a report is made. But it's protected activity. Do you concede that? It's protected activity. I don't concede that because he was not opposing an employment practice of the employer, and we've briefed that out. He was. He was. That's his allegation. And was he not? He was reporting a racist email. And that was a… He didn't do it to the employer. He didn't follow the rule. And it was… But he was. I just want to make sure where your dispute is because it seems to me that on this record, it is sufficiently clear that he was reporting a racist email in the workplace. And he reported… He told another employee, a subordinate, about it with the anticipation that it would be reported, and he said that this was part and parcel of a matter of conduct. In his view, a pattern of behavior, which we would call, as a matter of law, hostile work environment. So that's what he was doing. He was putting in motion a report of what he thought was a racist email. And that was an issue. Excuse me. You don't think that's protected activity? I think if it's true, it's protected activity. But it was an issue for the jury to decide whether or not he was complaining of an employment practice because that was an issue before the jury. Whether or not he was… An employment practice? Right. Because he could not just rely upon one isolated email. He had to be convinced that it was an employment practice. That was an issue for the jury to determine. Where does that come from? That's the case law that he… Give me the cite that says he has to believe it's an employment practice as opposed to just a racist email from a supervisor to another. Yes, Your Honor. We cited that in our briefing. And the other part of this is that… Can you give me the case? Or you just can't think of the case? I can't think of the case right now. It's in our briefing. The other part, though, is that the jury had to determine that he was retaliated against for this opposition activity. And that was a decision that they had to make in light of the… That goes, then, as I understand, the way you're framing this case is… Are you… Let's assume it's protected activity. Yes, Your Honor. So what your client is saying, that's fine. But even if it was protected, the way he did it was disruptive to the workplace. Is that what your argument is? Even if we assume for purposes of analysis that it's protected activity, he has to prove that he was terminated for making that report. And the employer's position was, number one, you reported it outside the chain. And the way you did this also caused us to lose trust and confidence in you as a supervisor, and that's why you're fired. So you think that's enough? I do think that's enough. They lose confidence in them. It doesn't have to be any impact on the workplace. It's just that the employer decides we don't have trust and confidence in them. That's right. You're a six-year employer. You're a six-year employee. You make substantial money, and you've been trained on this, and you go to a subordinate black person and give this email instead of walking across the parking lot to Human Resources. I understand that's your theory. I'm trying to figure out where the legal parameters are in this. Well, but the jury has to determine whether or not he was terminated in retaliation for making this report. Terminated because he went outside the chain of command, right? That's what you're saying. You're saying he was a six-year employee. He didn't report it in the right way. We're assuming it's protected content. So the plaintiff's argument is it's protected conduct or protected reporting, and the law he alleges is that he can report it however he chooses to get it addressed by the employer, which they actually did. They fired the guy. So then I'm trying to find out what your theory is. Do you say that that is not correct law, and if it is correct law, then is it enough that there be simply a loss of trust, or does there have to be some actual disruption in the workplace? There has to be, Your Honor, proof by the plaintiff that he was fired for reporting, and there was not. The jury had a chance to re-evaluate that. of trial. They deliberated for three hours and concluded, no, he was not retaliated for reporting anything. He was fired because he reported outside the chain, and they lost trust and confidence, and also he had lied to the very investigator that was looking into this. He said he didn't know where human resources, wasn't aware of human resources when he'd been there six years and been trained. He admitted in trial he'd lied about that, so his credibility was destroyed. Let me ask you this. I'm going to go over what you just said. He admitted that he lied, or you're saying he simply lied? No, he admitted that he lied. He admitted in trial that he lied to the human resource investigator. When she asked, why didn't you bring it to human resources, he says, I wasn't aware of it. In trial, he said, I lied to her. Those were his words, I lied? Yes. Yes. He said, I lied. Those weren't his words. I guess you can point me to the transcript where he didn't say that. No, that's exactly what he said. Let me ask you a different way. In terms of what's permitted under the company policies, once he is aware of this racist email that's sent by Rick Foley, is that how you pronounce the name? Foley. Foley. Is he forbidden to discuss it with anybody in the company who's not human resources above him in the chain of command? No, he's not forbidden to discuss it, Your Honor. The policies that he's trained on says you need to take it to your supervisor or HR. No, no, no. You're not answering my question. Okay. Is there anyone that he sees this email, he's in a room with several people, is he forbidden to say to those people in the room, there's this racist email that we just saw from Mr. Foley. Can he say that? Is that permitted? Yes. Is he permitted to call his friend and say, you'll never guess what I just saw, who was also an employee of the company but not up the chain of command, is he forbidden to say that? Hey, I just saw this racist email that Foley sent. It's contrary to policy. He should go to his supervisor or he should go to the ER. So he's simply forbidden to discuss it with anyone except somebody above him in the chain of command, is that what you're telling me? Right. That's a pretty draconian policy. Well, Your Honor. You can't even talk about what he saw? There's not, Your Honor, there's not a policy that prohibits him from doing that. That's not true. You've given me two different answers then. So which one is it? No, the answer is that if he's talking to someone else, I mean, that's permitted. It's not prohibited. Okay. So the question is not that he was, in other words, he was entirely permitted to talk to the black employee. What you say he's forbidden then to do is to talk to the black employee with the expectation that the black employee will report it. Is that the problem? That's correct. And also, all he's had to do is go across the street. I want to make sure I kind of go step by step. So it was permitted for him to tell the black employee that he saw a racist email sent by Foley. It wasn't prohibited. It was not prohibited. Correct. That was not against company policy. And so the problem in your mind then is that he did it with the expectation that the black employee would do something. Well, the problem in our mind is that he's been trained on that many, many times. He's been there six years. He knew the proper procedure was to go across the parking lot. Wait a minute. Proper procedure. You just told me it's not improper procedure for him to tell the black employee that he just saw the email. Correct? It's not prohibited. Well, that sounds like it's proper procedure then. Right. So the only thing that's improper is that he did it with the expectation that the black employee would report it? That's correct. That's correct. What if he had told Christian the incident and then walked across the parking lot and reported it himself? If he reported it himself the way he should have, then it would not have been a problem. That's exactly what he does with respect to Christian wasn't a black employee, right? So he tells Christian the story and then within a few minutes or an hour walks across and reports it up the chain. Would that have been a violation? It wouldn't have been a violation. It would have been very poor judgment for a supervisor to involve a subordinate to do that. And here that comes back to the issue the jury had to decide, was he terminated for having given that email to Christian? And was he retaliated against that? And the jury who listened to this testimony for four days and counsel had an opportunity to make all of his arguments on this case and they concluded no, he was not retaliated against and that's a jury question, a fact. Just to make sure I understand, he was not being disciplined for failure to report up the chain. As I understand it, he sees the incident and let's say he does nothing. He doesn't tell Christian, he doesn't tell his wife, he doesn't tell anybody inside or outside the company but then they find out you saw this incident, you didn't report it. That would be a violation, right? Yes, and you could be terminated for that as a supervisor, yes. But as I understand it, he was not in fact terminated for failure to report. That was not the reason. That was one of the reasons, Your Honor, he was terminated for going outside the chain and reporting it to Christian because Peterson never reported it to anyone. He just gave the email to Christian. Just listen to my question. I don't want to hear about why else he might have been terminated. Was one of the reasons he was terminated that he failed to report it up the chain? Correct. No, that was a question, it wasn't a statement. Was that one of the reasons? Yes, it was. Yes, he reported it outside the chain of command. No, you just gave a different answer. You just gave a different answer. Do you understand the difference between reporting, telling Christian and failing to tell HR? They're two different propositions. They're independent. You could do one without the other. You look blank. I'm not sure I understand. I don't understand the question, Your Honor. He was terminated. I'll give it a try. There are two things he did or didn't do. One of the things is he did not report it to HR. If the only thing he had ever done was not to do anything, if I can say it that way, would he have been disciplined? Yes, he would have because he has an obligation as a supervisor. How would they have known that he even saw the e-mail? They may not. There's a lot of things that are violations of policy people are never aware of. How many people were fired in that company for not reporting Foley's e-mails? I mean, apparently this was a pattern from Foley. Well, there's only one racist e-mail that we have from Foley. No, we've got a record here that Foley did this frequently, made racist comments and so on. How many people in the company were fired for not reporting Foley's racist behavior? None. There was none of that information that came to the record. When I ask you the question, would he have been fired simply for not reporting it, that would be an unusual thing in that company given that there's no record of anybody ever having been fired for saying nothing about Foley's racist e-mails. If it had come to the attention of the company that he knew about that racist e-mail and didn't report it, he would have been disciplined for it. Was the notice of termination, did that list fail you to report as a reason? Yes, it did. It was in the DARB report, Your Honor, where it indicated that reporting it, the Disciplinary Action Review Board report indicated that his failure to report it to HR and then also the loss of trust and confidence as a result of the way he handled this were the reasons why he was terminated. I don't understand about the DARB reports. Is that something that was given to him? No. Once this came to Fannie Bell, who is a human resource person, then they compile a panel to review the potential disciplinary action, and that's the Disciplinary Action Review Board that listens to all the information, and they concluded they supported the human resources recommendation to terminate. Is that the DARB meeting summary? Yes. And so, Your Honor, the— Was he told that? Is that what they told him when they terminated him, that you were being terminated for failure to report? He was terminated for loss in trust and confidence and your ability to continue as a supervisor is what he was told. Your Honor, and— How much evidence was in the record about other things? For example, that he was accused of misreporting his expenses, he was accused of telling other people how to misreport their expenses or that they were reporting for work, that he wanted to get rid of Foley because Foley was a competitor for his job. How much evidence of that was in front of the jury? There was considerable evidence about the motivation for Mr. Peterson to get Foley fired, and that was that there was cutbacks going on and he wanted to make sure that Foley was gone so that he wasn't gone. There was no evidence regarding— What's behind my question is that it strikes me as the most likely explanation for the jury's verdict is really not what we're talking about, but rather they took a dislike to Peterson and they said, you know, this guy's not the greatest employee in the world, but those weren't the reasons given by your company for firing him. No, Your Honor, but the points you bring out is that Foley's— or Peterson's credibility was completely destroyed by admitting that he lied to the very investigator that was looking into the issue. Did he lie on anything other than knowing about the HR? There was also testimony that he had coached a co-worker to cheat the company with respect to expenses. He did not—Foley did not—excuse me, Peterson didn't admit to that, but there was the co-worker to whom he made those comments. That's your defense of after acquired evidence, right? He wasn't fired for coaching the employee. That was a separate investigation. He was terminated before the company became aware of that. Isn't that correct? Correct, Your Honor. Correct, Your Honor. So in terms of the reason he was terminated, which is why we're here today, is because he observed a racist email. He didn't report it laterally or up the chain— say laterally, in effect, to HR or up the chain to somebody above him, but instead showed the email to a subordinate. You're saying his motivation is critical because even if it was a racist email, evidence of hostile work environment, his subjective motivation negates his reporting of this racist email because he acted with impure thoughts. Is that what you're saying? No, I'm not, Your Honor. I'm not saying the fact that he had a motivation for making sure Foley got fired does not negate his reporting of it or giving it to the opposition activity, potentially. What we come back to is that the company fired him because he didn't follow the chain of command in reporting it, and they lost trust and confidence in this person, who is a supervisor, oversees people outside the area of the company, and so this is the kind of behavior he demonstrates, and so they feel they don't have trust and confidence in him. Okay, so that circles back to your legal position as a matter of law, is that even if it doesn't cause any disruption to the workplace, if management loses trust and confidence in the supervisor, that's enough. Even if it's protected activity they engaged in, and even if he did it with an impure mind, as you're saying, that's not the reason. It's just the fact that the way he behaved in terms of the stated reporting policy, that allows you to fire him for engaging in protected activity because he didn't go about reporting it in the correct manner. Your Honor, we didn't fire him for engaging in protected activity. We fired him for going outside the chain and losing confidence, and so by virtue of that he has not proven that he was retaliated against for having reported the email or given it to Christian. We fired him for going outside the chain in reporting an activity. That reporting was protected, so he lost the protection under the law of the protected activity because he did it in a manner that caused the employer to lose trust and confidence. Because that was their judgment about him. And that's a factual issue that the plaintiff had to prove by a preponderance of the evidence that he was retaliated against for having made some opposition activity. He did not establish that. The jury ruled no on that point. It was the activity that he was supposed to report. Racist activity, right? And he didn't do it in the right way, but you're saying reporting it is protected. So I'm trying to figure out what the legal standard should be as to whether management can fire somebody because they don't report a protected activity in the right manner. Well, just because an employee, Peterson, reported it and he didn't report it in the right way doesn't remove the employer's ability to evaluate what happened here and determine it no longer has trust and confidence, and so we're going to fire him for that reason. We're not firing him in retaliation for reporting it. We're firing him for the fact that we lost trust and confidence because he went too subordinate. I think we're on the same page on that. You haven't given me the legal authority for it, but we'll have to decide that. But it's a factual issue that the plaintiff has to establish that he was retaliated. It's not a factual issue because there's a question of what is the underlying reason for the termination, and if he didn't report a racist violation through the proper channels, then there's a question of whether, well, if the management loses confidence, that basically undermines the whole notion of it being a protected activity, and that's why I'm looking for help. Is there any case law that you're aware of that says your theory is correct as a matter of law? Your Honor, I submit that what the issue is is— You're not answering my question. Well, but it's a question of fact, Your Honor, whether or not he was retaliated for engaging in this alleged opposition activity, which was still an issue also. But that is a question that the jury had to decide. They obviously decided, no, he wasn't retaliated against for his involvement in reporting. He was fired because they lost trust and confidence and that he reported it outside of the chain, and they didn't believe anything he said. Aside from that, was there any evidence that you put in to say that there was disruption in the workplace? Yes, there was evidence of that. What was that? The evidence was the fact that other people were concerned that it had gone to Christian instead of Human Resources. Mr. Guerrero, who was the one who saw it, was concerned because Christian came back to him and said, you know, thanks for helping me get rid of Foley, finally got rid of him. And so those things would have never happened if he would have taken it over to Human Resources, let them process it. Because when it went to Human Resources, Foley was fired that very day. I know. So they're not condoning this. So that's the disruption. But that was not the argument that we made. The argument we made was that he was not retaliated against for having been involved in this email, and the jury agreed. The jury agreed. I still have a couple of questions, by the way. I asked you the question, I asked you whether failure to report up the chain of command was one of the stated reasons for the fact that he was discharged. And you cited me to the DAB meeting report. Well, the testimony was a trial, that that was a reason why he was terminated, was the fact that he reported it outside the chain. That was testimony by Fannie Bell, by Mr. Andreessen. Don't you go off on these tangents that I have no interest in. And just listen to the question. Yes, Your Honor. Okay? I asked you about the notice of termination. He was told these are the reasons why you're being fired. Did that notice list as a reason for his being fired that he failed to report it up the chain of command? No, it did not. He was fired by a telephone call. There was no written notice? There was no written notice to him. No, there was not. Do we know what the telephone call said? It said that your employment is terminated by virtue of the fact that we no longer have trust and confidence in you as a supervisor. However, we're allowing you the opportunity to resign in lieu of termination. And didn't give any reasons at all? Other than we lost trust and confidence in his ability. So you referred me to this confidential investigative file of the DAB meeting, the report of the DAB meeting. Do you have it? Do you have it there to look at? I do, Your Honor. Why don't you pull it up? It says confidential. Is this something that he was given? He was not. Did it get into the record? Was it produced during discovery? How is it that it's here?  So how do we know what, in fact, are the reasons he was being fired? Because Mr. Andresen, who is over at Human Resources, went to Mr. Younger, who is the CEO, and he indicated that the DAB had recommended that he be fired for having gone outside the chain of command and lost... You're telling me something that happened in real life. I'm concerned about the record. It says, how do we know why he was being fired? What is in the record? Well, it's in the trial testimony that that's what happened and that's what Andresen testified to. Usually the way that's answered is X testified to this or this exhibit was introduced. So how do we know why he was fired? Because Andresen testified that he told Younger the reasons why the DARB committee recommended he be terminated, and Younger said, I agree. And where is that testimony? Where is that testimony? If you don't know, can you find out? Yeah, I can find out, Your Honor. I don't have it with me, but I can find out. Does he, as far as you recall, say that one reason he was terminated was his failure to report up the chain? Correct. Yes, he does. He says that? Right. And also that they lost trust and confidence in him. Right. And Mr. Younger said, I agree. Okay. Well, you've got 24 hours to provide a cite. File a 28-J letter with a cite. Thank you, Your Honor. I'll do that. What are the things you mentioned off the top of your head that you didn't give citations for? You can go back and listen to the tape, and whatever you sort of said is on the record, you'll provide citations for us. Okay? Thank you, Your Honor. I think we've taken more than your time. Yes, Your Honor, and I appreciate the time and the questions, and we're here requesting that... I think that was a suggestion that you should sit down. Thank you, Your Honor. Say nothing further. You're out of time as well, but we've given the other side extra time. We'll give you a couple of minutes for a bottle if you wish to take it. There have been lots and lots of questions about why my client was fired from employment, what the reasons for his termination were, and the truth of the matter is we don't know the real reasons for his termination. So there was this DARB meeting, a big committee meeting of senior management people, and there are the detailed notes that reflect those discussions about why he was fired, and those are in the record. And the DARB came together, and they made a recommendation. This is not contested testimony. They made a recommendation that Mr. Peterson be fired, supposedly because he reported the email outside the chain of command. The recommendation went to the president of the company named Dr. Younger, and this is contained in ER 646 of the excerpts of record, and at 642... I'm sorry, what number? ER 646-... And at 647... What volume? I don't know the volume offhand, Your Honor, but let me just finish that point. Let me get there. 646, you said? Yes, I believe that's correct. It's not correct. That's what my notes say here, and I believe it's correct. Okay, I'm looking at 646. And he was the final... 646 has four pages of transcripts. Oh, I see why. And then it would be page 36 of that. I'm looking at 36 right now. I can't read it. It's tiny. Well, I'm sorry about that. I need to borrow Judge Fletcher's reading glasses. May I? Go ahead. And that would be at lines 7 through 10, it establishes that Dr. Younger was the final decision-maker. And I don't think the defense counsel would dispute that fact. And it's also undisputed... It's also undisputed that Dr. Younger did no independent investigation by his own, and that he relied exclusively on the representations made by Mr. Andreessen, and that's at 659. Andreessen and... What's the point of all this? Well, the point is there's no evidence in the record about why the decision was made. Why isn't the investigative file, the DAB meeting, a pretty good... Presumably Mr. Younger doesn't just flip a coin or pick employees by a DAB board. He has his advisors, and his advisors give him reasons, and then he goes ahead and does what he suggests. Well, but... Isn't that report pretty good evidence as to why he did it? No, it's not. Something that the jury could believe? No, it would be hearsay. We know the basis for the recommendation. It was admitted, right? It was admitted. Excuse me? The report was admitted, the DAB meeting. Oh, but Mr. Younger never had a copy of it when he made the decision. His only information that he got was based on an oral conversation that he had with Mr. Andreessen. The DAB summaries were never before... He never had a chance to read them. They hadn't been transcribed at that point. The conversation between Mr. Andreessen and Mr. Younger happened like the day after the DAB meeting, and it had not been transcribed. And Mr. Andreessen says, and this is the trial testimony. It's not what I say. It's what's in the trial testimony, and all that... He explained that we made this recommendation to Dr. Younger, and I had a conversation with him. Quote, he supported the decision to terminate. Unquote. At ER 659, and if there are four pages on that, I apologize, 659, and then at page 87, line 9 through 915, he supported the decision. That's the totality of evidence as to what Dr. Younger's reasons were, and there is nothing more. The defendant has an obligation to show why they terminated him. They can't just make... Dr. Younger could have said, well, we terminated him because he got fully fired. You know, that could be one reason, and we otherwise wouldn't have wanted to fire him. We fired him because he was reporting it outside the chain of command. Let me say this. We don't know. If they had said we fired him because he did not report it out of the chain of command, would that have been enough? Would that have been a sufficient reason? It would have been an illegal reason, under the circumstances, because there's no evidence to support that he was disruptive in the workplace, which we maintain is the only defense. Once they admit that they fired him for reporting a racist email outside of the chain of command, and contrary to their rules, their only defense becomes that the manner was disruptive in the workplace. A, we continue to say that's an affirmative defense, but even if it's not, there is no evidence about that. What do they say is the evidence? In their briefing, they say, Mr. Peterson went to Mr. Guerrero, of course, who never reported this email. He never reported any of it. He was never offended by any of these jokes and comments. He never reported a word of it, and he took Mr. Peterson's job at the end of the day. He says that Mr. Peterson went to Mr. Foley, Mr. Guerrero, and said, oh, thank you for doing this. And Mr. Guerrero, who was the racist in all this, says, I was offended by that. There's no evidence that anyone in management knew that he was offended. There was no evidence that they knew about it, or that it disrupted the workplace in any way. Okay, thank you. Your Honor, I thank you. Okay, it's just argument stands for minutes.
judges: Kozinski, Fletcher, Fisher